UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ITALIAN AMERICAN DEFENSE LEAGUE
& RALPH MARCARELLI
    *Plaintiffs*,

v.

CITY OF NEW HAVEN, JUSTIN ELICKER.
    *Defendants.*

No. 3:23-cv-773 (OAW)

## ORDER GRANTING MOTION TO DISMISS

The Italian American Defense League ("IADL")[1] and Ralph Marcarelli ("Plaintiffs") bring this action against the City of New Haven and its mayor, Justin Elicker, alleging two claims for relief stemming from the City's decision to remove a statue of Christopher Columbus from Wooster Square, a public park in the City.  *See* Am. Compl. (ECF No. 7).

## I. INTRODUCTION

In Plaintiffs' own words, the Amended Complaint attempts to "avoid the generalized statement of interest that proved fatal to plaintiffs in a case decided by Judge Hall and cited by the defendants in the instant case."  Defs.' Mem. of Law (ECF No. 19, pg. 4); *see Am. Italian Women for Greater New Haven v. City of New Haven*, No. 21-cv-1401 (JCH),

---

[1] The IADL is a 501(c)(4) organization based in Clinton, Connecticut, and it appears to have been founded on or around January 25, 2021.  See IRS Determination Letter (July 22, 2022) (reflecting effective date of exemption is January 25, 2021), Italian-American Defense League, available at: Tax Exempt Organization Search Details | Internal Revenue Service (https://apps.irs.gov/app/eos/) (last visited September 30, 2024).  Further, the organization's apparent website notes bylaws that were adopted on January 25, 2021.  Bylaws of Italian American Defense League (IADL), available at: https://iadlnow.org/home.

1

2022 U.S. Dist. LEXIS 99305, 2022 WL 191285AI3 (D. Conn. June 3, 2022) (AIW).[2] However, in their attempt, Plaintiffs fail to allege facts sufficient to establish jurisdiction. Accordingly, the Defendants' Motion to Dismiss the Amended Complaint (ECF No. 13) is **GRANTED** with prejudice.

## II. STATEMENT OF FACTS

Plaintiff IADL is a "voluntary association of individuals organized to promote, advance and, when necessary, defend the interests of Italian-Americans. Among its members are Italian-Americans living in the Wooster Square neighborhood in the City of New Haven." Am. Compl. ¶ 3.  Plaintiff Ralph Marcarelli is a "long-time resident of the City of New Haven and lives on Wooster Place in the City of New Haven."  *Id.* ¶ 4.  Defendant Justin Elicker is the Mayor of the City of New Haven, Connecticut.  *Id.* ¶ 6.

Together, Plaintiffs allege a statue of Christopher Columbus standing in New Haven's historic Wooster Square[3] was swept-up in the aftermath of George Floyd's death in Minneapolis, Minnesota.  *Id.* ¶¶ 4-10.  They claim "[p]rotestors in New Haven clamored for the removal of certain public monuments, including a statue of Christopher Columbus." *Id.* ¶ 10

"New Haven's Charter gives the City the power to manage, regulate and control all City property.  Article IV, Section IV, A(1).  The Columbus statue is property of the City of

---

[2] To be clear, in *AIW*, Judge Hall specifically found organizational standing by the American Italian Women for Greater New Haven, but dismissed the case under Fed. R. Civ. P. 12(b)(6).  Thus, a lack of standing through generalized interests was not "fatal" to the case, as suggested by Plaintiffs' Opposition.
[3] As described by the plaintiffs, "Wooster Square Park and its environs is listed in the National Register of Historic Places as the 'Wooster Square Historic District' and has been so listed since 1971.  The park is the site of annual festivals and events celebrating Italian American heritage.  The neighborhood surrounding the park is the home to many Italian Americans who have chosen to live there so as to share their lives with others of similarly [sic] heritage.  Property owners in the area place a unique value on living in the vicinity because it is known to many as 'Little Italy.'"  Am. Compl. ¶ 11.

New Haven." *Id.* ¶ 18.  The Board of Park Commissioners, a public body operating as part of the City of New Haven, manages and maintains Wooster Square Park.  *Id.* ¶ 13.  On June 17, 2020, the Board of Park Commissioners held a public meeting and discussed removal of the Columbus statue from Wooster Square Park.  *Id.* ¶ 14.  Plaintiffs allege this meeting was unlawful because "there was no public notice to City residents . . . that removal of the statue would be discussed."  *Id.*  That said, "no formal vote was taken on the removal of the statue" at that meeting.  *Id.* ¶ 15.  Nevertheless, the Board subsequently "decided to remove the Columbus statue from the park" and kept "no minutes reflecting how it reached this decision."  *Id.*

"On or about June 25, 2020, Defendant Elicker stated, in a press release, that the Parks Commission had 'voted for the removal of the Columbus Statue in Wooster Square Park,' and he informed the public that the statue had been taken down that very afternoon."  *Id.* ¶ 16.

Mr. Marcarelli alleges he "suffered injury-in-fact to his property interest in the historical preservation of Wooster Square Park, its buildings, structures and features, in that his decision to own a home in the area was made in reliance upon the City's decision lawfully [sic] to maintain the Wooster Historic District, and the City's decision to remove the statue has an adverse impact on the character of his neighborhood and the value of his home."  *Id.* ¶ 21.

IADL sues on behalf of its members, like Mr. Marcarelli, "who are residents of New Haven living in or near the Wooster Historic District [who] have a property interest identical to . . . Mr. Marcarelli's."  *Id.* ¶ 22.

## III. **STANDARD OF REVIEW**

### A. **Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

Defendants challenge Plaintiffs' standing, but they do not cite Fed. R. Civ. P. 12(b)(1). The proper procedural route for a challenge to standing is a motion under Rule 12(b)(1). *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 89 n.6 (2d Cir. 2006); *Young Advocates for Fair Educ. v. Cuomo*, 359 F. Supp. 3d 215, 229 (E.D.N.Y. 2019) ("Because a plaintiff's standing goes to the subject matter jurisdiction of the Court, the appropriate vehicle to dismiss a cause of action for lack of standing is Federal Rule of Civil Procedure 12(b)(1)."). "The distinction is important because a typical dismissal under Rule 12(b)(6), *i.e.*, for failure to state a claim, is an adjudication on the merits with preclusive effect." *Id.* Nevertheless, a plaintiff's standing is "assessed as of the time the lawsuit is brought," *Comer v. Cisneros*, 37 F.3d 775, 787 (2d Cir. 1994).

To survive a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In deciding a motion to dismiss, the court must accept as true all well-pleaded factual allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. *Bryant v. Am. Fedn. of Musicians of the United States*, 666 Fed. Appx. 14, 16 (2d

Cir. 2016). The court "next consider[s] the factual allegations in [the] [Amended [C]omplaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. The court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. <u>DISCUSSION</u>

### A. <u>Standing</u>

The subject matter jurisdiction of federal courts extends only to justiciable "Cases" or "Controversies." U.S. Const. art. III, § 2. Thus, Article III standing plays a foundational role in our separation of powers. *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 135 (2011) (citing *Doremus v. Board of Ed. of Hawthorne,* 342 U.S. 429, 434 (1952).

"There is no case or controversy unless a plaintiff has standing to challenge the defendant's conduct." *Coalition for Competitive Elec. v. Zibelman*, 906 F.3d 41, 57-58 (2d Cir. 2018) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The doctrine of standing…requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks omitted).

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or

imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020).  An injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, at 560, *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York*, 98 F.4th 386, 394 (2d Cir. 2024).  Concreteness and particularity are distinct. *Spokeo v. Robins*, 578 U.S. 330, 339-40 (2016). "A concrete injury must be de facto; that is, it must actually exist." *Id.*, at 340. "Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (internal quotation marks and citation omitted).[4] "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, at 339.  The party invoking federal jurisdiction has the burden of establishing the three elements.  *Spokeo*, at 338.

Because IADL is an entity, standing may be established "in one of two ways: by establishing so-called 'associational' or 'representational' standing to sue on behalf of its members, or by establishing that it was directly injured as an organization." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021).  Here, the IADL alleges injuries coextensive with those suffered by Mr. Marcarelli and its members "living in or near the Wooster Historic District with property interests identical to Mr. Marcarelli's," and those stemming from its mission "to preserve Italian-American heritage and [to] foster public appreciation of the role of Italians in American life."  Defs.' Mem.  of Law (ECF No. 19,

---

[4] On this point, Plaintiffs' brief fails to cite to authoritative case law in support of many of its assertions, and it fails to engage with the legal issues presented by Defendants.

pg. 3). Thus, IADL asserts standing is established by virtue of its representational status and by direct injury.

Plaintiffs do not claim a property interest in the statue, nor in the land on which it stood. Instead, IADL argues the statue's removal diminished the value of its members' homes.

### B. Direct Injury Against IADL

The direct injury test that applies to individuals also applies to organizations. "The organization is just another person …seeking to vindicate a right." *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F. 3d 286, 294 (2d Cir. 2012). Thus, to show standing, IADL must show a concrete and particularized harm. *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). "In the context of organizational standing, meeting this burden requires show[ing] that the challenged action did not merely harm [the organization's] abstract social interests but perceptibly impaired its activities." *Am. Italian Women for Greater New Haven*, 2022 WL 1912853, 2022 U.S. Dist. LEXIS 99305, *7 (citing *Russell-Tucker*, 8 F.4th at 173 (internal quotations and citations omitted)). The Amended Complaint fails to plead direct injury to IADL. Indeed, it appears the organization might not have come into existence until months after the statue had been removed. *See* n.1, *supra* (noting a January 2021 founding, after a June 2020 removal of the statue). Furthermore, the Amended Complaint does not indicate how the statue's removal materially impacted core activities of the organization. *Russell-Tucker*, 8 F.4th at 174-75. For example, there is no claim that IADL gathered at the statue for annual wreath-laying ceremonies on a federal holiday, as was argued in *AIW*. *See* 2022 WL 1912853 at *5. Therefore, if IADL is to proceed in this litigation under a representative theory, Mr. Marcarelli himself must have standing.

7

C. <u>Mr. Marcarelli's Injury</u>

In assessing any injury to Mr. Marcarelli, the court notes that Plaintiffs do not allege any property interest in the park, nor in the statue itself. *See Protect Our Parks, Inc. v. Chicago Park District*, 971 F.3d 722, 736-738 (7th Cir. 2020). Nor does Mr. Marcarelli allege an aesthetic interest, or any specific activities involving the statue, as did the AIW.[5] He never alleges that he visited the statue. *See Pollack v. U.S. Dep't Of Justice*, 577 F.3d 736, 742 (7th Cir. 2009) (affirming dismissal where plaintiff "never claims that he visits" the area affected); *see also Nat'l Post Office Collaborate v. Donahoe*, No. 13-cv-1406 (JBA), 2014 WL 6686691 (D. Conn. Nov. 26, 2014) (plaintiffs lacked standing to object to sale of a particular historic building because there was no evidence that their members suffered a concrete injury, particularly as there was no evidence that any members had enjoyed historic features of building). *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) ("While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice.") (citation omitted). Further, "removal of the statue does not impede [Mr. Marcarelli's] ability to use Wooster Square – at least in a concrete and particularized way." *See Am. Italian Women for Greater New Haven*, 2022 WL 1912853, 2022 U.S. Dist. LEXIS 99305, *10. The notion of permanent harm also

---

[5] To be sure, the plaintiffs allege the park, generally, "is the site of annual festivals and events celebrating Italian-American heritage." Am. Compl. ¶ 11. But they do not specifically claim that IADL or Mr. Marcarelli frequented the statue, and IADL fails to show that the statue factored into its core activities. *Am. Italian Women for Greater New Haven*, 2022 WL 1912853, 2022 U.S. Dist. LEXIS 99305, *10 (noting that with respect to an annual wreath laying at the base of the statue, "[t]he removal of the statue undisputedly adversely affects one of the [core] activities [AIW] regularly conducted (prior to the challenged act) in pursuit of its organizational mission.") (internal quotation marks and citation omitted).

seems speculative.[6]   Finally, the kind of harm he alleges is general, not particularized, and his reasoning effectively might bestow upon residents veto power over any modification, landscaping, or maintenance performed in the park and maybe even throughout Wooster Square.  Indeed, without alleging any activity or interest in the statue, plaintiffs are "concerned bystanders" using this case as a vehicle to vindicate value interests, and that is not sufficient to establish Article III standing.  *Diamond v. Charles*, 476 U.S. 54, 62 (1986).

To be sure, a "specific, concrete, and particularized allegation of a reduction in the value of property owned by the plaintiff is sufficient to demonstrate injury-in-fact at the pleading stage." *See Barnum Timber Co. v. United States EPA*, 633 F.3d 894, 898 (9th Cir. 2011); *but see* Kathrein v. City of Evanston, Ill., 636 F.3d 906, 914 (7th Cir. 2011) (finding that a "demonstrable reduction in the market value of one's property is an injury in fact for standing purposes," rather than a hypothetical reduction in market value). But Mr. Marcarelli's alleged injury as to his home's value is not specific, nor concrete, nor particularized.  *See Lujan*, at 560; *Schuler v. Bd. of Educ. of Cent. Islip Union Free Sch. Dist.*, No. 96-cv-4702 (JG), 2000 WL 134346, at *18 (E.D.N.Y. Feb. 1, 2000).  The court does not doubt that Plaintiffs' protest is sincere, but "[a] generalized grievance, no matter

---

[6] The court takes judicial notice of the fact that the Wooster Square Monument Committee recently unveiled a ten-foot bronze statue entitled, "Indicando la via al futuro" (pointing the way to the future) depicting a father, mother and two children with everything they own in suitcases arriving in the United States for a better life.  Fed. R. Evid. 201(b)(2) (a court may take judicial notice of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"), Brittany Schaefer & Natasha Lubczenko, New Haven unveils a new statue to celebrate the Italian-American community, WTNH (June 9, 2024) *updated on* June 10, 2024, available at: https://www.wtnh.com/news/connecticut/new-haven/new-haven-unveils-a-new-statue-to-celebrate-the-italian-american-community/   (last accessed September 30, 2024); *see* Associated Press, New Haven dedicates immigrant monument in square where Christopher Columbus statue was removed (June 9, 2024) (last accessed September 30, 2024).

how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 694 (2013); *United States v. Richardson*, 418 U.S. 166 (1974); *see Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731–32 (7th Cir. 2020) (finding a park advocacy group and local residents lacked standing to protest changes to a park).

Thus, the Amended Complaint shows Mr. Marcarelli to lack standing. And because his injuries are coextensive with IADLs, IADL also lacks standing (at least without additional details about other residents). *See Gardner v. Mutz*, 962 F.3d 1329, 1342–43 (11th Cir. 2020) ("Gardner I"). Accordingly, Plaintiffs have failed to meet their burden, and the case should be dismissed.

### D. Failure to State a Claim

Even if the court were to presume standing, Plaintiffs still fail to state a claim upon which relief can be granted. Plaintiffs allege a due process claim. A due process claim must plausibly allege that "(1) state action (2) deprived him or her of liberty or property (3) without due process of law." *Bellin v. Zucker*, 6 F.4th 463, 474 (2d Cir. 2021). Plaintiffs allege a property interest in the "historical preservation of Wooster Square Park, its buildings, structures and features." Am. Compl. ¶ 21. At the same time, Plaintiffs concede "New Haven's Charter gives the City the power to manage, regulate and control all City property. Article IV, Section IV, A(1). The Columbus statue is property of the City of New Haven." *Id.* ¶ 18. Further, Wooster Square Park is for all city residents to enjoy. "Such [a] universal benefits [is] not [a] property interest[] protected by the Due Process Clause." *Meyers v. City of New York*, 812 Fed. Appx. 11, 16 (2d Cir. 2020) (citation

omitted). Plaintiffs otherwise have not identified any property or liberty interest recognized in state law that could ground their due process claims.[7]

Further, the United States Court of Appeals for the Second Circuit has held that municipal action (short of a Fifth Amendment taking) "has never been held to deprive a person of property within the meaning of the Fourteenth Amendment." *BAM Historic Dist. Ass'n v. Koch*, 723 F.2d 233, 237 (2d Cir. 1983). In that case, New York City residents brought a procedural due process challenge against New York City for failing to hold a hearing before opening a homeless shelter in their neighborhood. Residents contended that the shelter would cause a decline in their own property values, but the Second Circuit affirmed the lower court's dismissal of the case for failure to state a claim. *Id.*

Looking beyond our Circuit, Plaintiffs' due process claim also bears resemblance to *Frank L. Rizzo Monument Comm*ittee *v. City of Philadelphia*. There, plaintiffs alleged massive protests sparked by the death of George Floyd resulted in the removal of a statue of Frank L. Rizzo "under cover of night, with no process or input from the public or approval from the Philadelphia Art Commission." *Frank L. Rizzo Monument Comm. v. City of Philadelphia*, 2022 WL 125907, 2022 U.S. Dist. LEXIS 6588, *3 (E.D. Pa. Jan. 13, 2022). On June 2, 2020, Mayor James Kenney issued an executive order entitled: "Emergency Order" to remove the statue. The Committee, which had donated the statue to the City of Philadelphia pursuant to a "Donation and Maintenance Agreement," asserted a procedural due process claim based upon Defendants' removal of the statue.

---

[7]Plaintiffs give short shrift to Defendants' arguments, stating, "Whatever the interest…" but this is the *Plaintiffs' case*. Such vague identification of their own interest suggests that even the plaintiffs recognize that no such protected interest exists. Elsewhere, Plaintiffs offer contradictory arguments, in one breath disclaiming ownership of the statue (and conceding that it is owned by the City), while later asserting that its removal has the "all the hallmarks of thievery." Defs' Mem.of Law (ECF 19, pg. 6).

The Committee specifically argued that "Defendants removed the Rizzo Statue…without requesting that the Art Commission convene a [s]pecial [m]eeting to first provide the City with approval as required by the [Philadelphia Home Rule] Charter," and that "Defendants' decision to forgo [that] procedure[] denied Plaintiff procedural due process." *Frank L. Rizzo Monument Comm.*, 2022 U.S. Dist. LEXIS 6588, *7. The court dismissed the case because it could not identify an interest in the statue that satisfied the requirements of a due process claim. The *Rizzo* plaintiffs undoubtedly had a stronger property interest argument than Plaintiffs in the case at bar, given that the Committee had a signed agreement with its city. Here, no such agreement existed.

Finally, Mr. Marcarelli's claim is conclusory in asserting that his home's value somehow decreased after the City removed the statue. *Schuler*, 2000 WL 134346, at *18; *see Shoultz v. Derrick*, 369 F. Supp. 3d 1120, 1128 (D. Or. 2019). The limited record presented by Plaintiffs simply is too speculative to withstand scrutiny, even at this early stage of litigation. Thus, without a viable property interest having plausibly been asserted, the Amended Complaint does not state a claim for relief.

### E. Leave to Amend

The court may grant a motion to dismiss with prejudice when amending the complaint would be futile. *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "Futility is a legal determination that the proposed amendments would not cure prior deficiencies in the pleadings, such as a failure to allege standing." *O'Shea v. P.C. Richard & Son, LLC*, 2017 U.S. Dist. LEXIS 122424, *19 (S.D.N.Y. Aug. 3, 2017) (citing *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224-25 (2d Cir. 2017) (quoting *Panther Partners, Inc. v.*

*Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012))).  The court hereby dismisses this case for lack of standing, but makes clear that, even if Plaintiffs established standing, their claims would still fail to overcome the defendants' 12(b)(6) motion.

Dismissing on jurisdictional grounds does not require this court to grant leave to amend.  *See, e.g., MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 91 (2d Cir. 2023) (affirming denial of leave to amend due to plaintiff's failure to identify "additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend" that would establish Article III standing (citation omitted)), *Meimaris v. Royce*, No. 19-3339, 2021 U.S. App. LEXIS 33072, 2021 WL 5170725, at *6 (2d Cir. Nov. 8, 2021) (summary order) (affirming denial of leave to amend as "futile" when plaintiff offered "no indication that there are any additional allegations that could overcome [plaintiff's] lack of individual standing").  Given Plaintiffs' rather limited briefing, there is little indication any facts exist which could establish standing, or a due process claim.  Consequently, the Amended Complaint is dismissed with prejudice.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 13) is GRANTED.  The Amended Complaint (ECF No. 7) is DISMISSED with prejudice.

**IT IS SO ORDERED** at Hartford, Connecticut, this 2nd day of October, 2024.

                                                   /s/
                                  Omar A. Williams
                                  United States District Judge